The question in this case is, whether the petitioner, who is what is commonly called a bonded exempt under paragraphs 1, 2, and 3 of clause 4 of section 10 of the act of Congress, passed in February, 1864, can be made to perform military service in the Home Guards, by force of the acts of our Legislature creating that organization. The solution of this question depends upon the preliminary inquiries, first, whether the petitioner was, by virtue of the act of congress, in the service of and performing duty for the Confederate Government at the time when he was arrested by the defendant for service in the Home Guard; and, secondly, whether Congress had power under the Constitution, to conscribe the petitioner for any other than services of a military kind.
Upon the first inquiry, I think there cannot be a reasonable doubt. A critical examination of the 2d and 3d paragraphs of the clause and section of the acts of Congress to which I have referred will show that the personal attention of the bonded exempt is required in the management of the farm, to enable him to furnish the (421) *Page 270 
Government with the amount of provisions required of him. It is inadmissible to suppose that the Government was indifferent as to the source from which his quota of supplies was to be obtained. The Government expected him to produce the grain and meat on his own farm, and not to purchase them from another person. The exigencies of the country imperatively demanded that every man should produce what he could, and the spirit of the act of Congress in granting exemptions to the owners of fifteen able-bodied hands, and authorizing details in favor of the owners of a less number, evinces a clear design to stimulate production to the greatest extent. It is manifest that this policy would be thwarted if a large slave owner, after securing his exemption, should be allowed to become indifferent whether he raised provisions on his own farm or purchased them elsewhere. The requirement of a personal supervision of his farm is further shown by the proviso contained in the 6th paragraph of the clause and section of the act referred to, which declares, "That all the exemptions granted under this act shall only continue whilst the persons exempted are actually engaged in their respective pursuits or occupations." This proviso is evidently not confined to the particular exemption spoken of in the same paragraph, for it uses the term "act" instead of paragraph or clause, and the words, "their respective pursuits or occupations," are clearly inapplicable, if contractors to carry the mail were the only persons meant. These words necessarily embrace all the classes of exempts mentioned in the whole "act."
A reference to the exemption act of October, 1862, in favor of slave owners, and the general dissatisfaction which it caused throughout the country, will prove still more fully that Congress intended, by the act of 1864, to place the bonded exempts from military duty into the service of the Confederate Government, as producers.
(422) The act of October, 1862, exempted from military service in the army the owner of twenty slaves, without regard to the age, sex, or condition, "to secure the proper police of the country." But, notwithstanding the cause assigned for it, the fact of this exemption of slave owners produced, as is well known, a popular clamor against the measure, which was so great that Congress was compelled to yield to it; which it did by repealing the act and passing the act of February, 1864. The latter act omits the odious feature in the former, and while providing for the indispensable necessity of keeping up a surveillance over slaves when owned in large numbers, made it acceptable to the country by demanding a vigorous service from the owners as producers for the Government.
The second inquiry is, whether Congress had power under the Constitution to conscribe the petitioner for any other than services of a military kind. That it had, I think, there cannot be a doubt. Congress *Page 271 
has conferred upon it by the Constitution of the Confederate States the power to declare war, and to raise and support armies. Art. 1, sec. 8, pars. 11 and 12. These powers are conferred in unlimited terms, except that no appropriation of money to that use shall be for a longer time than two years. Armies, when raised, must be supported, and the power to support must be unlimited as the power to raise them. If the Government have the money, or the ability to procure it, Congress may, and usually does, appropriate that to the purpose of purchasing the necessary supplies; but if there be no money in the treasury, and the Government have no means of procuring a sufficient amount of it, I cannot perceive any reason why these persons, who would otherwise be in the field as soldiers, may not be compelled to furnish, according to their respective abilities, such provisions and munitions of war as the (423) army may need. This commutation of service is similar to the escuage which, in process of time, was allowed in the feudal law in exchange for the military services which the tenants in chivalry originally owed the lord of whom they held their lands. 2 Bl. Com., 74. But even supposing that this commutation of service cannot be compelled by Congress, there can be no objection to its being allowed to those who may prefer the service of raising provisions to that of performing military duty in the field or garrison.
From the foregoing considerations, I am clearly of opinion that the petitioner was rightfully in the service of the Confederate Government. This, as it seems to me, must settle the question as to his liability to be seized and carried off as a member of the Home Guard.
The supremacy of the war power of the Confederate over that of the State Government cannot be disputed.
The personal service which the Confederate Government has a right to demand, and has demanded, of the petitioner is inconsistent with that which the State demands of him; and, such being the case, the latter must give way to the former. In this respect the bonded exempts differ from all those classes of exempts from whom the Confederate Government makes no demand of other kinds of service as a condition of exemption from military service. All of the latter kind of exempts the State may, at its discretion, pass into the service in the militia or Home Guard organization. The Confederate Government cannot exempt from the service of the State any person who is not called into its own service; but every one who is doing service for it must, of necessity, be protected from being forced into an inconsistent service for the State.
I concur, therefore, in opinion with Judge Heath, that the petitioner ought to be discharged; but as he, in deference to some prior adjudications of two of his brethren on the bench of the Superior (424) *Page 272 
Court, made an order pro forma to remand the petitioner, I think that order should be reversed, with costs, and an order of discharge entered.